(Reap. Dec. 8233)

KAWAHARA COMPANY *v.* UNITED STATES

Entry No. 211.

(Decided June 11, 1953)

*Lawrence, Tuttle & Harper* (*George R. Tuttle* of counsel) for the plaintiff.

*Charles J. Wagner*, Acting Assistant Attorney General (*Daniel I. Auster* and *Chauncey E. Wilowski*, special attorneys), for the defendant.

JOHNSON, Judge: This is an appeal for a reappraisement of certain ajinomoto exported by S. Suzuki & Co., Ltd., of Japan to the plaintiff in Honolulu, T. H. The ajinomoto was imported in five sizes, the petit, small, medium, large, and giant tins. Entry was made at prices in United States dollars per case, c. i. f. Honolulu. The petit size was invoiced at $18 per case, packed, less nondutiable charges, and appraisement was made thereof at yen $68.20 per case. The remainder of the tins was entered and appraised in United States dollars as follows:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Small | tins entered at | $33 per case; | appraised at | $37.52 per case | | | | | |
| Medium | " | " | " | 31 | " | " | " | " | 36.19 " " |
| Large | " | " | " | 34 | " | " | " | " | 36.96 " " |
| Giant | " | " | " | 62 | " | " | " | " | 55.96 " " |

packed, packed
less nondutiable
charges

At the trial, Toyonodu Domen, who was the president of Ajinomoto Co. of Tokyo, testified on behalf of the plaintiff that the name of the company was changed in 1946 from S. Suzuki & Co., Ltd., and that in the year 1940 he was director in charge of the foreign division and the export manager. In such position, he was familiar with the sale of ajinomoto for use in Japan as well as for export. The witness checked his personal records, which he carried with him from Japan upon a visit to the United States, to refresh his memory as to the prices at which ajinomoto was being sold in Japan in the summer of 1940. Respecting the origin of such record, the witness testified that it concerned his department mostly on export "and the domestic one is of course the prices just the same as export," and that he fixed such prices himself. From this personal record, which, however, was not admitted in evidence, he testified that the prices at which ajinomoto was being sold by his company in Japan for export to the United States in 1940 were as follows, Petit tins, $18; small tins, $33; medium tins, $31; large tins, $34; and giant tins, $55.80, with a 10 per centum special discount, c. i. f. San Francisco and Los Angeles. The witness

further testified that his firm was selling the same quantities and the same sizes in Japan for home consumption, and the articles were invoiced in the Japanese equivalent for the English expressions, calling them tokoshokan, shokan, chu kan, dai kan, and toko daikan, and that the product sold in Japan was exactly the same; that he was selling such sizes in Japan during 1940 and 1941; that at the time he had a price list for Japanese home consumption and one for export, and they were exactly the same, except in expression, but the prices were based upon the exchange rate which was "$23. and something."

The witness further testified that he was familiar with the sales made in Japan; that they were made to five firms who were the sole distributors. The witness also testified that the branch office in Osaka sold ajinomoto at the same prices.

Plaintiff's second witness was Shuji Yanagida, who testified that he was the dispatcher for the Ajinomoto Co. of Tokyo and kept in contact with Wilbur Ellis & Co., the sole agent of the company in the United States. He was put on the stand to identify the several affiants who signed affidavits which the plaintiff proposed to admit into evidence and to state whether or not the affiants were conversant with the English language. However, Government counsel objected to that line of testimony.

The plaintiff's next witness was Robert M. Kamide, an interpreter who amply qualified himself to translate certain Japanese characters appearing upon the affidavits which the plaintiff sought to introduce in evidence. These affidavits were all objected to by Government counsel. They were marked exhibits 3–A, 3–B, 3–D, and 3–E for identification, subject to being qualified for admission as exhibits. All these exhibits were rejected with the exception of exhibit 3–B for identification. However, this affidavit was marked in evidence as exhibit 3–B. It is not clear from the certification in Japanese upon these affidavits whether the affiant was present or had knowledge of the character of the affidavit or that the certification was attended to through an agent of the shipper. As to exhibit 3–B, the affiant certified that Seizaburo Amada appeared before the notary public and admitted signing the affidavit. It did not disclose, however, that he was conversant with the English language, these affidavits all being written in English. The affidavit disclosed that the petit-, small-, medium-, large-, and giant-sized tins were all sold in Japan in the ordinary course of trade, in the usual wholesale quantities, in the principal markets of Japan, at the net prices of yen 62.56 per case, yen 116.84 per case, yen 108.56 per case, yen 118.68 per case, and yen 97.52 per case, respectively, including outside cases and inland freight, the prices being the same for any wholesale quantity, the usual wholesale quantity being one case. Had it been possible to

establish that the affiant knew the English language and had read the affidavit, some weight might have been accorded it. However, there appears to be no such assurance.

The Government's evidence consisted of reports from Japan of United States representatives. From a report, dated April 30, 1940, numbered Y40–47, by Acting Treasury Attaché E. W. Daley, it appears that the firm of S. Suzuki & Co., Ltd., of Tokyo was visited on April 23, 1940, and T. Domyo, the export manager, was interviewed. The information gained was verified by an inspection of the firm's books of account and records. The attaché ascertained that S. Suzuki & Co., Ltd., of Tokyo, was the manufacturer and parent firm. S. Suzuki & Co., Ltd., of New York, was a New York corporation, wholly owned by S. Suzuki & Co., Ltd. of Tokyo. S. Suzuki & Co. of Los Angeles, Ltd., was a California corporation, wholly owned by the New York corporation. As to the ajinomoto, the report reads:

2. Formerly packing and contents were identical for domestic and export sale, the only difference being in the printing, etc. on the package containers. Now, export content and packing is the same as before, but in the domestic market, due to restrictions and scarcity of containers, pasteboard containers in retail sizes have been substituted for metal containers and only retail package sizes are sold.

3 and 4. In Tokyo, there are 4 special sales agents or jobbers, while outside Tokyo there are numerous jobbers. In Tokyo, quantities are picked up as needed, but shipments to Osaka are in carload lots. *In Tokyo only medium, small and petit sizes are sold. Outside of Tokyo only medium and petit sizes are sold.*

Minimum quantities for export were stated to be 10 cases while the usual shipments were stated to be in quantities varying from 30 to 70 cases.

5. * * * Since the establishment of the Los Angeles subsidiary, that firm is the exclusive importer on the West Coast and the former agent-distributors operate under the Los Angeles firm.

\* \* \* \* \* \* \*

8. The change in invoicing was stated to be due to policy in view of the declining yen and the change was made to secure more dollars.

9. The change was due to the establishment of S. Suzuki and Co. of Los Angeles Ltd. as a subsidiary of the New York corporation, in order to handle importations and distribution in the Pacific Coast area.

The prices appearing upon the report were taken from a new price list, effective February 1, 1940, and such prices, based on yen-exchange rate of $0.23\frac{11}{16}$ on yen values, are as follows:

| Units | Agents' price c. i. f. | New York and Los Angeles companies c. i. f. |
|---|---|---|
| Giant | $62. 00 | $55. 80 |
| Large | 34. 00 | 34. 00 |
| Medium | 31. 00 | 31. 00 |
| Small | 33. 00 | 33. 00 |
| Petit | 18. 00 | 18. 00 |

When converted to yen at the exchange rate of $0.23¹¹⁄₁₆:

| Units | Agents' price c. i. f. | New York and Los Angeles companies c. i. f. |
|---|---|---|
| Giant | ¥261. 74 | ¥235. 57 |
| Large | 143. 54 | 143. 54 |
| Medium | 130. 87 | 130. 87 |
| Small | 139. 31 | 139. 31 |
| Petit | 75. 99 | 75. 99 |

Bulk shipments were shown as $0.68 to agents or ¥2.87, and $0.65 to companies or ¥2.74.

The report also gives the domestic prices as follows:

| Medium tins | 5 doz. | ¥118. 00 |
|---|---|---|
| Small tins | 10 doz. | 127. 00 |
| Petit tins | 10 doz. | 68. 00 |

In a letter, dated April 26, 1941, S. Suzuki & Co., Ltd., wrote Treasury Attaché Scott that petit tins was the only size sold in the domestic market, the wholesale price of which was ¥68.20. This price agrees with the appraised value of petit tins.

Counsel for the plaintiff contends that a foreign value existed for each of the sizes imported in July 1940, as shown in the affidavits of the distributors who purchased from S. Suzuki & Co., Ltd., in Tokyo and Osaka, as evidenced from plaintiff's exhibit 3–B, and that the plaintiff's witnesses amply demonstrated the existence of such foreign value for the ajinomoto in question.

The Government, on the other hand, contends that the plaintiff has failed to overcome the presumption of correctness of the appraised values, plaintiff's proof falling short of meeting the requirements of the statute.

Upon a careful consideration of the evidence adduced and the records before me, I find that the presumption of correctness of the appraiser's finding has not been overcome. Therefore, judgment will accordingly be entered at the values found by the appraiser.